# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        **Plaintiff,**

v.

        Case No. 13-40060-10-DDC

ANTHONY CARLYLE THOMPSON (10),

        **Defendant.**

## MEMORANDUM AND ORDER

This case is before the court on remand from the United States Court of Appeals for the Tenth Circuit. Before the Tenth Circuit, defendant Anthony Carlyle Thompson argued that one or more of his convictions were supported by evidence dependent on cell-site locational information ("CSLI") gathered under an 18 U.S.C. § 2703(d) order issued by the court. The remand follows the Supreme Court's decision in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), ruling that the government's seizure of historical CSLI under a § 2703(d) order generally does not satisfy the Fourth Amendment's warrant requirement. On remand, Mr. Thompson essentially abandons his § 2703(d) argument. Mr. Thompson now contends authorities acquired his CSLI in real-time under Kansas wiretap orders predating the § 2703(d) order but that acquisition of the CSLI exceeded the scope of the Kansas wiretap orders. Because Mr. Thompson did not present the argument he raises on remand to the Tenth Circuit despite the availability of the argument on his direct appeal, the mandate rule precludes the court from granting Mr. Thompson relief based on it. The court thus denies Mr. Thompson's request to vacate his conviction and sentence and reimposes final judgment consistent with the Jury Verdict of June 23, 2015, (Doc. 771) and the sentence imposed December 7, 2015 (Doc. 941).

**I.     Pre-*Carpenter* Factual and Procedural Background**

In 2012, Kansas authorities, through a series of controlled purchases, determined

Mr. Thompson, in concert with other named defendants, was selling cocaine.  To gain evidence

about the nature and scope of the drug enterprise, authorities sought a series of state-court

wiretap orders under Sections 22-2514, *et seq.*, of the Kansas Statutes Annotated.  Doc. 1064 at

22–28.  Judge David R. Platt, a District Judge in Kansas's Eighth Judicial District, issued at least

nine orders authorizing wiretaps under Kansas law.  Docs. 379-1, 379-2, 379-3, 379-5, 379-7,

379-9, 379-10, 379-11, 379-13, 379-15.  The orders permitted authorities to tap phones

belonging to members of the drug conspiracy, including two phones associated with

Mr. Thompson:  (1) a T-Mobile line ending in 1783, believed to belong to Mr. Thompson but

subscribed to a Jason Roberts; and (2) a prepaid T-Mobile line ending in 2893, believed to

belong to Mr. Thompson but with no subscriber information.[1]

Under Kansas law, the wiretap orders only permitted authorities to intercept

communications within Judge Platt's territorial jurisdiction—*i.e.*, the four counties comprising

Kansas's Eighth Judicial District.  *See* Kan. Stat. Ann. § 22-2516(3) ("Upon such application the

judge may enter an *ex parte* order, as requested or as modified, authorizing the interception of

wire, oral or electronic communications within the territorial jurisdiction of such judge[.]").  But,

authorities tapped cellular communications from a location outside of those four counties without

first establishing that the phone subject to a wiretap order was within one of the four counties

when tapped.  *See* Doc. 517 at 3.  Information from the tapped communications helped

authorities understand Mr. Thompson's role in the drug conspiracy.

---

[1]     At the May 21, 2019, remand hearing, Mr. Thompson proffered that he owned and used phone lines ending
in 1783 and 2893.  The government withdrew its argument that Mr. Thompson lacked standing to challenge the
gathering of CSLI from those lines.

A Second Superseding Indictment charged Mr. Thompson with (1) one count of conspiracy to distribute cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A) (Count 1); (2) one count of conspiracy to distribute cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C) (Count 17); (3) eight counts of distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Counts 3, 5, 6, 7, 8, 9, 10, 14); and (4) one count of distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) (Count 13). Doc. 195 at 2–7, 10.

Mr. Thompson moved to suppress the evidence acquired from the tapped cellular devices, arguing the wiretaps had occurred outside Judge Platt's territorial jurisdiction. Doc. 356 at 22–30. Ruling on a motion to suppress filed in this case, the court concluded the government could introduce the contents of a tapped cellular communication only if it could establish that a party to a given communication was within the Eighth Judicial District when the tap occurred. Doc. 517 at 4–5. To satisfy this threshold requirement for admission, the government sought § 2703(d) orders to acquire CSLI from the cellular providers about the tapped phones. Doc. 417 at 3–4. Section 2703(d) authorizes a court to issue an order permitting the government to obtain CSLI from a cellular provider if the government "offers specific and articulable facts showing that there are reasonable grounds to believe that the [CSLI records] are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Mr. Thompson challenged the constitutionality of § 2703(d)'s reasonable suspicion threshold for acquiring the CSLI, arguing that the Fourth Amendment applied to the seizure of CSLI and required a probable cause showing. Doc. 425 at 2–3; *see* Doc. 435 at 1. The government argued § 2703(d) comported with the Constitution, contending the Fourth Amendment did not apply where third-party cellular providers maintained the CSLI. Doc. 429. The government neither argued in the alternative that

its evidence satisfied the Fourth Amendment's probable cause threshold nor sought a warrant. *See id.*

The court concluded that seizing CSLI from a cellular provider did not involve a search of a defendant under the Fourth Amendment because the defendant already had revealed his CSLI to the cellular provider. Doc. 440-1 at 6–8 (citing *In re United States Application for Historical Cell Site Data*, 724 F.3d 600 (5th Cir. 2013)). In the alternative, the court *sua sponte* considered whether the government had advanced sufficient evidence and papers to secure a warrant for the CSLI. *Id.* at 11. The court concluded: (1) "By establishing that the phone calls are evidence of crimes, the government has also established probable cause for the related CSLI because such information reveals the defendants' location at the time of each call"; and (2) the case agent's affidavits in the applications for the § 2703(d) orders satisfied the Fourth Amendment's "oath or affirmation requirement." *Id.*

The court thus issued § 2703(d) orders permitting the government to acquire CSLI from several cellular providers, including T-Mobile. Docs. 450–52. T-Mobile responded to the § 2703(d) order, indicating that it no longer possessed CSLI for phone numbers ending in 1783 and 2893. *See* Doc. 1014 at 9 (Transcript of Status Conference where government discusses results of serving § 2703(d) orders). But, the government learned that it had acquired, in real-time, the CSLI for the phones associated with numbers ending in 1783 and 2893 when authorities had executed the wiretaps. *See id.* And, the government disclosed this fact to Mr. Thompson during the September 30, 2014, status conference and during a hearing on defendants' motion to suppress CSLI evidence acquired through § 2703(d) orders. *See id.*; *see also* Doc. 1016 at 28–31 ("Q. Okay. And then T-Mobile wasn't able to send you call cell site location information, but you had been getting it during the wire, correct? A. Yes."). But,

4

Mr. Thompson did not argue to the court that authorities had exceeded the scope of the Kansas

wiretap orders issued by Judge Platt when they acquired CSLI in real-time from T-Mobile.

At trial, the government admitted 31 cellular communications to which Mr. Thompson

was a party. *See* Doc. 1303-1 at 1–2 (summary of phone calls admitted during trial). A jury

convicted Mr. Thompson on Counts 1, 3, 5–10, and 13–14. *See* Doc. 771 (jury verdict for

Mr. Thompson). The court sentenced Mr. Thompson to 360 months' imprisonment on each

count, with the sentences running concurrently. Doc. 941 at 3.

On appeal, Mr. Thompson challenged the constitutionality of § 2703(d) and the use of

CSLI data to establish the particular tapped cellular communications that occurred while a

tapped phone was located within the four counties comprising Kansas's Eighth Judicial District.

*United States v. Thompson*, 866 F.3d 1149, 1152 (10th Cir. 2017), *vacated*, 138 S. Ct. 2706

(2018); *see also* Brief of Appellant at 34, *United States v. Thompson*, No. 15-3313 (10th Cir.

Oct. 7, 2016) (phrasing argument as "[w]ithout suggesting that § 2703(d) is otherwise

unconstitutional, it is clear that as to CSLI it *is* unconstitutional due to the privacy implications").

But, the Tenth Circuit did not recognize that Mr. Thompson had raised the argument that

authorities exceeded the scope of the Kansas wiretap orders when they seized his CSLI in real-

time. *See id.* (not listing this argument as one raised by Mr. Thompson). And, during the May

21, 2019, remand hearing, Mr. Thompson, when questioned on the matter, affirmatively

conceded that he did not argue to the Tenth Circuit that authorities had exceeded the scope of the

Kansas wiretap orders by seizing his CSLI.

The Tenth Circuit, seemingly not advised that Mr. Thompson's CSLI was seized under

the authority of the Kansas wiretap orders, proceeded to analyze whether § 2703(d) was

constitutional. *See id.* at 1153 (discussing acquisition of Mr. Thompson's CSLI in terms of

§ 2703(d) order without mentioning Kansas wiretap orders); *see also id.* at 1154–60 (analyzing

constitutionality of § 2703(d) but not discussing constitutionality of seizure of CSLI under Kan.

Stat. Ann. §§ 22-2514, *et seq.*). The Tenth Circuit affirmed Mr. Thompson's convictions,

concluding, on the CSLI issue, that "the district court did not err in granting the government's

application for orders requesting historical CSLI under § 2703(d) or in admitting some of that

CSLI at a pretrial proceeding." *Id.* at 1160; *see also id.* at 1164 (affirming conviction and

sentence). Mr. Thompson filed a petition for a writ of certiorari. Doc. 1183. While

Mr. Thompson's petition for a writ of certiorari was pending, the Supreme Court decided

*Carpenter*, a case addressing the constitutionality of § 2703(d) orders for CSLI.

## II.    *Carpenter* Decision

In *Carpenter*, the authorities had acquired § 2703(d) orders for CSLI for several suspects

in a theft ring. *Carpenter*, 138 S. Ct. at 2212. Over Mr. Carpenter's motion to suppress, the

government introduced the CSLI at trial to place him at or near the scene of several thefts. *Id.* at

2212–13. A jury convicted Mr. Carpenter. *Id.* at 2213. On appeal, the United States Court of

Appeals for the Sixth Circuit rejected Mr. Carpenter's challenge to § 2703(d), concluding CSLI

was not subject to Fourth Amendment protection because, under the Third-Party Doctrine, a

cellular phone user voluntarily provides his CSLI to his cellular provider. *Id.*

The Supreme Court, however, rejected the proposition that the Third-Party Doctrine

applies to historical CSLI. *Id.* at 2217, 2219–20. The Court concluded that "individuals have a

reasonable expectation of privacy in the whole of their physical movements" such that

authorities may not "'secretly monitor and catalogue every single movement of an individual[] . .

. for a very long period'" without involving Fourth Amendment protections. *Id.* (quoting *United

States v. Jones*, 565 U.S. 400, 429 (2012) (Alito, J., concurring)). And, the court relied heavily

on the retrospective nature of Mr. Carpenter's CSLI.  Because individuals typically keep their cellular phones on or close to their persons historical CSLI allows authorities to identify a person's whereabouts on a nearly 24-hour, seven-day-a-week basis.  *Id.* at 2218.

Concluding that seizing historical CSLI from a cellular provider amounts to a search under the Fourth Amendment, the Court held "that the Government must generally obtain a warrant supported by probable cause before acquiring [historical CSLI]."  *Id.* at 2221.  Also, the Court observed that the government's acquisition of historical CSLI "in the absence of a warrant . . . is reasonable only if it falls within a specific exception to the warrant requirement."  *Id.* (quoting *Riley v. California*, 134 S. Ct. 2473, 2482 (2014)).  The Court concluded its affirmative analysis by stating:  "[A]n order issued under Section 2703(d) . . . is not a permissible mechanism for accessing historical cell-site records.  Before compelling a wireless carrier to turn over a subscriber's CSLI, the Government's obligation is a familiar one—get a warrant."  *Id.* at 2221.  But, the Court left open the question whether the Fourth Amendment protects against seizing CSLI in real-time.  *See id.* at 2220 ("Our decision today is a narrow one.  We do not express a view on matters not before us: real-time CSLI or 'tower dumps' (a download of information on all the devices that connected to a particular cell site during a particular interval).").

## III.    Post-*Carpenter* Procedural Background and Arguments on Remand

The Supreme Court vacated the Tenth Circuit's judgment and remanded Mr. Thompson's case "for further consideration in light of *Carpenter*."  *Thompson v. United States*, 138 S. Ct. 2706 (2018).  On remand, the Tenth Circuit ordered the parties to file simultaneous briefs to "(1) identify the issues *Carpenter* affects, and (2) address how the Supreme Court's analysis impacts, if at all, the positions taken by the parties in the briefs filed previously in the [Tenth Circuit]."

*United States v. Thompson*, No. 15-3313, Order dated July 31, 2018. Mr. Thompson and the

government continued briefing the case as though the government had seized Mr. Thompson's

CSLI under a § 2703(d) order instead of the Kansas wiretap orders. *See* Supplemental Brief of

Appellant at 9–23, *United States v. Thompson*, No. 15-3313 (10th Cir. Sept. 10, 2018) (asserting,

"[a] *Carpenter* violation occurred *because the Government relied on § 2703(d)* instead of a

warrant to obtain CSLI," and arguing that seizure of CSLI under § 2703(d) is unconstitutional

after *Carpenter* and requires exclusion of CSLI and CSLI-dependent evidence (emphasis

added)); Supplemental Brief of Appellee at 23–28, *United States v. Thompson*, No. 15-3313

(10th Cir. Sept. 10, 2018) (discussing CSLI acquisition as if government seized it under

§2703(d) order). The Tenth Circuit "remanded the case[] to the district court to determine

whether its alternative holding survives *Carpenter* and for further proceedings consistent with

the Supreme Court's decision." *United States v. Thompson*, No. 15-3313, Order/Mandate dated

Oct. 18, 2018 at 4.

On remand, Mr. Thompson, who elected to proceed pro se for the remand proceedings,

realized that authorities had acquired his CSLI under the Kansas wiretap orders, not the

§ 2703(d) order.[2] Consistent with this understanding, Mr. Thompson has presented a new

---

[2]     As stated in the prior paragraph, the Tenth Circuit's remand order and mandate directs the court to
"determine whether its alternative holding survives *Carpenter*." *United States v. Thompson*, No. 15-3313,
Order/Mandate dated Oct. 18, 2018 at 4. As the government acquired Mr. Thompson's CSLI under the authority of
the Kansas wiretap orders, the seizure occurred *before* the court's discussion of probable cause. Because
Mr. Thompson now recognizes this fact, it is no longer apparent that the court's probable cause discussion is
germane to the seizure of Mr. Thompson's CSLI. But, even if it were germane, a court's post-seizure probable
cause finding cannot sanitize a search and seizure if authorities did not comply with the Fourth Amendment's
warrant requirement in the first instance. *See Katz v. United States*, 389 U.S. 347, 356 (1967) ("'Over and again this
Court has emphasized that the mandate of the (Fourth) Amendment requires adherence to judicial processes,' *United
States v. Jeffers*, 342 U.S. 48, 51 (1951), and that searches conducted outside the judicial process, without prior
approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few
specifically established and well-delineated exceptions."); *see also Specht v. Jensen*, 832 F.2d 1516, 1522 (10th Cir.
1987) ("[A] police officer must obtain a search warrant *before conducting a search* unless an exception to the
warrant requirement exists." (emphasis added)). In sum, the court's alternative probable cause discussion does not
provide a basis for upholding admission of evidence dependent on Mr. Thompson's CSLI.

argument for relief—that the wiretap orders issued by Judge Platt authorized the seizure of oral

communication and aural transfers but not CSLI.[3]  The government disputes Mr. Thompson's

interpretation of the scope of the Kansas wiretap orders.  The government also argues that

Mr. Thompson's argument about the scope of the Kansas wiretap orders is waived and not

properly before the court because Mr. Thompson failed to raise the argument to the Tenth

Circuit.  In response to the government's waiver argument, Mr. Thompson contends the

government invited any omission in argument by his appellate counsel when it represented to the

Tenth Circuit that authorities acquired Mr. Thompson's CSLI under the § 2703(d) order.  At the

May 21, 2019, remand hearing, Mr. Thompson also contended that his argument about the

seizure of his CSLI under the Kansas wiretap orders depends on the Supreme Court's holding in

*Carpenter* that a person has a reasonable expectation of privacy in their CSLI.

## IV.    Analysis

The court concludes Mr. Thompson waived his argument that the authorities exceeded

the scope of the Kansas wiretap order by not raising it in his direct appeal.  Because of his

waiver, the mandate rule limits the court's ability to review Mr. Thompson's argument on

remand.  The court also concludes Mr. Thompson has not adequately invoked one of the

exceptions to the mandate rule.  And, in reaching this conclusion, the court determines that

---

[3]        Mr. Thompson also advances arguments under the Speedy Trial Act and the Speedy Trial Clause of the
Sixth Amendment for overturning his convictions.  And, he argues for a new sentencing proceeding based on the
court relying on CSLI-dependent evidence to establish the quantity of drugs for which he was responsible and in
assessing him an offense-level enhancement for his leadership role in the conspiracy.  These arguments depend on
Mr. Thompson showing, first, that *Carpenter* applies to his case and provides the basis for excluding the evidence
dependent on his CSLI.  Additional reasons also preclude the court from granting relief on these arguments.  They
are:  (1) the Tenth Circuit already addressed Mr. Thompson's Speedy Trial Act argument, *Thompson*, 866 F.3d at
1152 (citing *United States v. Madkins*, 866 F.3d 1136 (10th Cir. 2017)); (2) Mr. Thompson cites no authority for the
proposition that a court may reevaluate the decision to exclude time under the Speedy Trial Act years after its
decision; (3) Mr. Thompson waived his Speedy Trial Clause argument by not raising it to the Tenth Circuit; and (4)
the exclusionary rule would not have applied at Mr. Thompson's sentencing proceeding, *see United States v. Ryan*,
236 F.3d 1268, 1271–72 (10th Cir. 2001) (exclusionary rule only applies at sentencing if government commits
Fourth Amendment violation with purposes of gaining information to enhance sentence).

*Carpenter*'s holding does not affect the seizure of CSLI if the seizure occurs within the scope of an order issued under Sections 22-2514, *et seq.*, of the Kansas Statutes Annotated. These conclusions compel the court to deny Mr. Thompson relief on remand.

"'The law of the case doctrine, self-imposed by the courts, operates to create efficiency, finality, and obedience within the judicial system' so that 'an appellate decision binds all subsequent proceedings in the same case.'" *United States v. Amedeo*, 487 F.3d 823, 829 (11th Cir. 2007) (quoting *United States v. Tamayo*, 80 F.3d 1514, 1520 (11th Cir. 1996)). "The mandate rule is simply an application of the law of the case doctrine to a specific set of facts." *Id.* at 830 (quoting *Tamayo*, 80 F.3d at 1530).

Under the mandate rule "[a] lower court is 'bound to carry the mandate of the upper court into execution and cannot consider the questions which the mandate laid at rest.'" *Estate of Cummings by & through Montoya v. Cmty. Health Sys., Inc.*, 881 F.3d 793, 801 (10th Cir. 2018) (quoting *Sprauge v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)). When it hears a case on remand under a mandate, a district court "cannot carry it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded." *Amedeo*, 487 F.3d at 830 (quoting *Tamayo*, 80 F.3d at 1530). Instead, "a district court must comply strictly with the mandate rendered by the reviewing court." *Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128, 1132 (10th Cir. 2001) (quoting *Ute Indian Tribe v. Utah*, 114 F.3d 1513, 1520–21 (10th Cir. 1997)).

"Failing to raise an issue on appeal . . . has the same consequences for that litigation as an adverse appellate ruling on that issue." *Id.* "Any issue that could have been but was not raised on appeal is waived and thus not remanded." *Id.* (quoting *United States v. Husband*, 312 F.3d

247, 250 (7th Cir. 2002)). And, "[p]arties cannot use the accident of remand as an opportunity to reopen waived issues." *Id.* (quoting *Husband*, 312 F.3d at 251).

Here, Mr. Thompson admits he did not raise the argument that authorities had exceeded the scope of the Kansas wiretap orders until the remand proceedings. By not presenting this argument to the Tenth Circuit, Mr. Thompson waived it. And, under the mandate rule, a district court typically may not entertain an argument waived on appeal.

A district court only can "deviate from the mandate 'under exceptional circumstances, including (1) a dramatic change in controlling legal authority; (2) significant new evidence that was not earlier obtainable through due diligence but has since come to light; or (3) if blatant error from the prior decision would result in serious injustice if uncorrected." *Huffman*, 262 F.3d at 1133 (quoting *United States v. Webb*, 98 F.3d 585, 587 (10th Cir. 1996)). "Generally courts read 'these exceptions narrowly, requiring district courts to apply the law of the case unless one of the exceptions specifically and unquestionably applies.'" *United States v. Monsisvais*, 946 F.2d 114, 117 (10th Cir. 1991) (quoting *United States v. White*, 846 F.2d 678, 685 (11th Cir. 1988)).

Mr. Thompson's primary argument trying to avoid application of the mandate rule, is that the government invited his appellate counsel's error by not raising the scope of the Kansas wiretap orders in briefing before the Tenth Circuit. But, the invited error doctrine is not one of the exceptions to the mandate rule. And, even if it were a stated exception or one that could be folded into the "serious injustice" aspect of the third exception to the mandate rule, the invited error doctrine still would not apply here. "The invited-error doctrine prevents a party who induces an erroneous ruling from being able to have it set aside[.]" *United States v. Jereb*, 882 F.3d 1325, 1338 (10th Cir. 2018) (quoting *United States v. Morrison*, 771 F.3d 687, 694 (10th

Cir. 2014)). "Having induced the court to rely on a particular erroneous proposition of law or fact, a party may not at a later stage use the error to set aside the immediate consequences of the error." *Id.* (brackets omitted) (quoting *Morrison*, 771 F.3d at 694).

Mr. Thompson argues that the government, by representing to the Tenth Circuit that authorities acquired CSLI under the § 2703(d) order, invited the Tenth Circuit to analyze the constitutionality of § 2703(d) in lieu of whether his CSLI properly was seized under the Kansas wiretap orders. Mr. Thompson's argument may portray the government's argument to the Tenth Circuit accurately. *See* Brief of Appellee at 38, *United States v. Banks*, No. 15-3324 (10th Cir. Jan. 20, 2017) (describing seizure of CSLI as stemming from § 2703(d) order); *see also id.* at 54–63 (arguing for constitutionality of § 2703(d)). But, Mr. Thompson's argument fails to recognize the sequence of events during his direct appeal. The government was the appellee on direct appeal and only presented arguments supporting the constitutionality of § 2703(d) *after* Mr. Thompson incorrectly represented to the Circuit that the constitutionality of § 2703(d) was at issue in his case. *See* Brief of Appellee at 6, *United States v. Banks*, No. 15-3324 (10th Cir. Jan. 20, 2017) (describing seizure of CSLI as from § 2703(d) order); *see also id.* at 21–34 (challenging constitutionality of § 2703(d) orders for CSLI without raising argument about seizure of Mr. Thompson's CSLI under Kansas wiretap order). And, once Mr. Thompson's opening brief failed to raise an argument about authorities exceeding the scope of the Kansas wiretap orders, the argument was lost to Mr. Thompson. *See United States v. Walker*, 918 F.3d 1134, 1151 (10th Cir. 2019) (collecting cases and stating, "[o]rdinarily, a party's failure to address an issue in its opening brief results in that issue being deemed waived. And, ordinarily, we will decline to reach the merits of waived issues"); *see also Reedy v. Werholtz*, 660 F.3d

1270, 1274 (10th Cir. 2011) ("[S]ome issues raised below are not mentioned in the opening brief, much less argued, and are therefore abandoned.").

In short, Mr. Thompson, not the government, focused the argument on appeal to § 2703(d) and his focus is what defined the scope of the Circuit's analysis. To put it bluntly, the government could not have invited an error that Mr. Thompson himself made in his opening brief.

Mr. Thompson also contends *Carpenter*'s holding provides a necessary premise for his argument that authorities exceeded the scope of the Kansas wiretap orders. This contention, it appears, is aimed at the first exception to the mandate rule—"a dramatic change in controlling legal authority." *See Huffman*, 262 F.3d at 1133 (quoting *Webb*, 98 F.3d at 587). But, while *Carpenter* qualifies as a significant shift in legal authority controlling the government's ability to seize CSLI under a § 2703(d) order, it has little or no effect on the seizure of CSLI under Kansas's statutory scheme authorizing wiretaps. This is so because Kansas's statutory scheme differs from § 2703(d) in two crucial ways.

First, whereas a § 2703(d) order allows seizure of historical CSLI, authorities executing Kansas wiretap orders for phone numbers ending in 1783 and 2893 acquired Mr. Thompson's CSLI in real-time. But, *Carpenter* specifically left open the question whether seizing CSLI in real-time was entitled to Fourth Amendment protection. *Carpenter*, 138 S. Ct. at 2220. And, extending *Carpenter*'s holding about the seizure of historical CSLI to the seizure of real-time CSLI is far from clear because *Carpenter* emphasized that historical CSLI allowed the government to learn of a person's whereabouts on a nearly 24-hour, seven-day-a-week basis. Meanwhile, seizing CSLI in real-time only reveals a person's whereabouts at the moment of its seizure.

Second, central to *Carpenter*'s holding invalidating § 2703(d) orders for historical CSLI

was the reasonable suspicion threshold § 2703(d) adopts. But, the Kansas statutory scheme

requires much more. Kansas law requires (1) the applicant, on oath or affirmation, to identify

"the facts and circumstances relied upon by the applicant to justify such applicant's belief that an

order should be issued" and (2) a probable cause finding by the court issuing the wiretap order.

Kan. Stat. Ann. §§ 22-2516(1), (3). The Kansas statutory scheme thus comports with the core

functions of the Fourth Amendment—that seizures authorized by courts be supported by an oath

or affirmation by the requesting officer and a judicial finding of probable cause. And, if a

Kansas wiretap order issued under Kan. Stat. Ann. §§ 22-2514, *et seq.*, authorized seizure of

CSLI—whether real-time or historical—it is not apparent that *Carpenter* would support the

invalidation of that order. *Carpenter* does not qualify as a "dramatic change in controlling legal

authority" to the Kansas statutory scheme which authorities used to seize Mr. Thompson's CSLI.

Mr. Thompson's argument about authorities exceeding the scope of the Kansas wiretap orders

thus does not depend on *Carpenter*.

Last, Mr. Thompson suggests the court should address the merits of his argument that the

authorities exceeded the scope of the Kansas wiretap orders because not addressing the argument

would produce a manifest injustice. This argument appears to rely on the third exception to the

mandate rule—"if blatant error from the prior decision would result in serious injustice if

uncorrected." *Huffman*, 262 F.3d at 1133 (quoting *Webb*, 98 F.3d at 587). But, where

Mr. Thompson did not present an argument that the authorities exceeded the scope of the Kansas

wiretap orders, the Tenth Circuit opinion did not address the issue and does not contain any

error—no less a "blatant error," on the issue.[4]

---

[4]     Even if Mr. Thompson could rely on a blatant error outside of the Tenth Circuit decision—*i.e.*, that
authorities clearly exceeded the scope of the Kansas wiretap orders—Mr. Thompson fails to identify any Kansas

## V.      Conclusion

The court denies Mr. Thompson's request for relief on remand because the argument he presents for excluding the CSLI for numbers ending in 1783 and 2893, and the evidence dependent on that CSLI, was not presented to the Tenth Circuit. Under the mandate rule and *Huffman*, the argument is not properly before the court. If Mr. Thompson is to attack his conviction and sentence based on authorities exceeding the scope of the Kansas wiretap orders when seizing his CSLI, he must raise this argument in a 28 U.S.C. § 2255 proceeding and a claim based on ineffective assistance of trial and appellate counsel.[5]

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Thompson's "Request to Vacate Mr. Thompson's Conviction or in the Alternative Grant a New Trial" (Doc. 1335) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** the Clerk of the Court term Mr. Thompson's Motion for Joinder of Procedural Arguments (Doc. 1363) as moot because the document is a Memorandum of Law in support of his request for relief and has been considered by the court in adjudicating this case.

**IT IS FURTHER ORDERED BY THE COURT THAT** the Clerk of the Court term Mr. Thompson's "Request to Disclose Favorable Information Pursuant to Rule 16" (Doc. 1358) as moot because the motion was addressed at the remand hearing on May 21, 2019, and the documents requested by Mr. Thompson are part of the record.

---

case establishing that a wiretap order issued under Sections 22-2514, *et seq.*, of the Kansas Statutes Annotated does not permit for real-time seizure of CSLI. Not to mention, overriding the mandate rule any time a litigant presents a meritorious new argument on remand that was available but not presented on appeal would defeat the Tenth Circuit's instruction in *Huffman* that "[a]ny issue that could have been but was not raised on appeal is waived and thus not remanded." 262 F.3d at 1133 (quoting *Husband*, 312 F.3d at 250).

[5]      To the extent Mr. Thompson's papers on remand may be construed as seeking modification to his sentence under the First Step Act, he must pursue that aspect of his claim through a motion under 18 U.S.C. § 3582.

**IT IS SO ORDERED.**[6]

**Dated this 29th day of July, 2019, at Kansas City, Kansas.**

s/ Daniel D. Crabtree_____
Daniel D. Crabtree
United States District Judge

---

[6]     If Mr. Thompson intends to appeal this order, he must file a notice of appeal with this court within 14 days of the date of this order.  *See* Fed. R. App. P. 4(b)(1)(A).