# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANTHONY CARLYLE THOMPSON (10),<br><br>Defendant. | Case No. 13-40060-10-DDC |

## MEMORANDUM AND ORDER

This is a criminal case with a lengthy and unusual history. Relevant to the current motion, the Tenth Circuit remanded the case to this court after the Supreme Court's holding in *Carpenter v. United States*, 138 S. Ct. 2206 (2018). The Circuit directed this court "to determine whether its alternative holding survives *Carpenter* and for further proceedings consistent with the Supreme Court's decision." Doc. 1289 at 4. During the remand proceedings, Mr. Thompson filed a Motion to Vacate or in the alternative for a New Trial (Doc. 1335). The court received the parties' arguments and ruled that Mr. Thompson had waived his argument that government's real-time procurement of his Cell Site Location Information ("CSLI") exceeded the scope of the Kansas state court's wiretap order. The court's Memorandum and Order dated July 29, 2019, reasoned that Mr. Thompson had waived this argument because he never had raised them before the Tenth Circuit. Doc. 1369 at 9.

Mr. Thompson filed a pro se Motion for Reconsideration on August 5, 2019.[1] Doc. 1371; Doc. 1372. And, out of an abundance of caution, Mr. Thompson also filed a Notice of Appeal to the Tenth Circuit on August 8, 2019. Doc. 1376. The court determined—despite Mr.

---

[1] Mr. Thompson actually filed two documents on the same day, each purporting to be a "Motion for Reconsideration" (Doc. 1371; Doc. 1372). The court construes the documents together as one motion.

Thompson's Notice of Appeal—that it still had jurisdiction to consider Mr. Thompson's Motion for Reconsideration. Doc. 1395. Mr. Thompson then asked the court to appoint counsel for him for the remainder of the case, which the court did on August 20, 2019. Doc. 1382. The government responded to Mr. Thompson's Motion on November 4, 2019. Doc. 1402. On December 17, 2019, Mr. Thompson's newly appointed counsel filed a Reply. Doc. 1411.

The Reply contains arguments that were not asserted by Mr. Thompson's Motion and supporting memorandum. So, the court gave the government an opportunity to file a supplemental brief addressing two questions: (1) whether the court has jurisdiction to hear the new arguments asserted for the first time in Mr. Thompson's Reply, and (2) whether the court applied the wrong iteration of the mandate rule in its July 29, 2019 Memorandum and Order. Doc. 1417. The court allowed Mr. Thompson to file a surreply, if desired, but limiting his filing to the first question. The court also set the case for oral argument. The government filed a supplemental brief on February 6, 2020 (Doc. 1418). Mr. Thompson filed a Notice of Additional Authority on February 18, 2020 (Doc. 1420). The court then heard the parties' arguments at a hearing on February 20, 2020.

At the hearing, Mr. Thompson continued to argue that he hadn't waived his arguments because the Supreme Court had vacated the judgment. Mr. Thompson also asked the court for another opportunity to brief his arguments explaining how *Carpenter* had affected his case. The government raised two arguments in response. First, the government asserted that if the court resurrects Mr. Thompson's arguments about the scope of the Kansas wiretap order, it again would raise its previously waived good faith argument. Second, the government opposed additional briefing from Mr. Thompson, asserting that the court had discharged its responsibilities under the Tenth Circuit's mandate. And, the government argued, Mr. Thompson

was not entitled to any additional opportunities to submit arguments he easily could have made earlier.

The court first turns—as it must—to the issue whether it has jurisdiction to consider the new arguments raised in Mr. Thompson's Reply. Concluding that it has jurisdiction, the court then considers whether its earlier Order misapplied the Tenth Circuit's mandate. Finally, the court considers the remaining arguments in Mr. Thompson's Motion for Reconsideration.

### I. Is Mr. Thompson's reply a successive motion?

Mr. Thompson's Reply (Doc. 1411) claims that the mandate rule does not bar the court from considering the arguments he asserts in his Motion for Reconsideration. He makes three primary arguments: (1) the mandate rule does not prevent the court from acting unless there is an appellate decision on the merits; (2) Mr. Thompson did not waive any argument because the prior appeal is a nullity; and (3) the mandate rule does not preclude the court from considering his arguments because there is no law of the case.

In response, the government asserts that Mr. Thompson did not raise any of these arguments in his original motion. Doc. 1418 at 2. The government thus "considers the Reply to be a new motion for reconsideration, even though it is not so titled." *Id.* at 3. But, the government continues, the Reply is not a successive motion for reconsideration depriving this court of jurisdiction. Ordinarily, under *United States v. Jackson*, 950 F.2d 633, 636 (10th Cir. 1991), a successive motion does not toll the time for appeal. But here, the government argues, because the "successive motion for reconsideration has no operative effect [on Mr. Thompson's appeal] on its own, . . . this [c]ourt still has jurisdiction." Doc. 1418 at 4.

In *Jackson*, the defendant pleaded guilty, then moved to withdraw his plea. The court denied the motion to withdraw the plea and defendant filed a motion asking the court to

reconsider that decision. While that motion was pending, defendant filed a Notice of Appeal. About two months after defendant filed his notice of appeal, the district court denied defendant's reconsideration motion. The defendant did not file a new notice of appeal after the order denying the reconsideration motions. 950 F.2d at 634.

On appeal, the government claimed that the Circuit lacked jurisdiction to consider the merits of defendant's appeal. *Id.* The government argued that defendant's notice of appeal was premature. After close analysis of Fed. R. App. P. 4(b), the Circuit disagreed. It reasoned, "[A] criminal defendant should not lose his right to appeal because of an ambiguous rule." *Id.* at 635. Instead, the Circuit held, "[W]hen a defendant files a motion that tolls the time for appeal, the motion holds the notice of appeal in abeyance and the notice becomes effective upon the disposition of the motion." *Id.* Thus, the defendant's motion to reconsider qualified as a motion that "tolled the time for appeal." *Id.* (citing *United States v. Dieter*, 429 U.S. 6 (1976)). *Jackson* also ruled that defendant's "notice of appeal became effective after the district court ruled on [the defendant's] motion," *id.* at 636, thus conferring jurisdiction on the Circuit to consider his appeal.

Citing an earlier Tenth Circuit decision, *Jackson* also held that successive motions for reconsideration don't toll the time for filing a notice of appeal. *See* 950 F.2d at 636 (citing *United States v. Marsh*, 700 F.2d 1322 (10th Cir. 1983)). In *Marsh*, the Circuit considered a similar scenario. The district court there had denied defendant's motion for a new trial. *Marsh*, 700 F.2d at 1323. The *Marsh* defendant moved the court to reconsider its order denying defendant's motion a new trial. *Id.* The Circuit held that the motion to reconsider a decision denying a motion for new trial did not toll the time for appeal because it was "nothing more than

a motion for rehearing." *Id.* at 1324. While these cases establish important principles, the court concludes that Mr. Thompson's situation differs from both *Jackson* and *Marsh*.

In *Jackson*, the defendant's first motion was not "considered a motion for rehearing." *Jackson*, 950 F.2d at 636. And, in *Marsh*, the defendant's first motion for a new trial was denied before he filed his motion to reconsider. *Marsh*, 700 F.2d at 1323. *Marsh* recognized that "strong policy and reasoning, particularly in the civil cases, are for not allowing this type of motion to further toll the notice of appeal time." *Id.* at 1328. The Circuit recognized this rule again in *Jackson*. *Jackson*, 950 F.2d at 636 ("[O]ne party could not be permitted to delay the appeal indefinitely through successive motions for reconsideration." (citing *Marsh*, 700 F.2d at 1326)). In contrast, here, the court has not yet decided Mr. Thompson's first motion for reconsideration. And, even if Mr. Thompson's Reply counts as a successive motion for reconsideration, that successive motion does not further toll the time for appeal because the court hadn't yet ruled Mr. Thompson's Motion. So that pending Motion continues to toll the time for Mr. Thompson's appeal. The court also recognizes the unique circumstances of Mr. Thompson's representation. He filed his Motion for Reconsideration pro se but his Reply was filed by his newly appointed counsel. Given this case's unusual procedural posture, the court holds that Mr. Thompson's Reply does not amount to a successive motion for reconsideration because it does not further toll the time for appeal. The court concludes it properly may consider Mr. Thompson's new arguments in his Reply and thus turns to the substance of those arguments.

**II.     Motion for Reconsideration**

Concluding that it properly can consider the arguments in Mr. Thompson's Reply together with the arguments in Mr. Thompson's Motion, the court first sets out the standard for

reconsideration. Then, the court considers each of Mr. Thompson's many arguments, in turn, below.

**A. Legal Standard**

D. Kan. Rule 7.3(b) requires a movant to base a motion for reconsideration on: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." A motion to reconsider "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Ferluga v. Eickhoff*, 236 F.R.D. 546, 549 (D. Kan. 2006) (citing *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). So, "a motion for reconsideration is appropriate [only] where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* (citing *Servants of Paraclete*, 204 F.3d at 1012). "The decision whether to grant a motion to reconsider is committed to the district court's discretion." *Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010) (citing *In re Motor Fuel Temperature Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1166 (D. Kan. 2010)); *see also Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995) (noting "the decision to grant reconsideration is committed to the sound discretion of the district court").

**B. Discussion**

Mr. Thompson's Motion raises, in summary form, five issues. The separately numbered subsections address all five of them.

**1. Should the court allow supplemental briefing from Mr. Thompson?**

At the February 20, 2020 hearing, Mr. Thompson asked for yet another opportunity to submit a brief arguing *Carpenter*'s effect on his case. The government opposed this request, asserting the court would abuse its discretion should it grant this request. The government noted

Mr. Thompson's choices about his representation in this remanded case: He elected to proceed pro se during the remand, filed briefs and argued at hearings, and then—late in the proceedings—asked the court to reappoint counsel. Now, the government asserts, Mr. Thompson seeks special treatment from the court because of his inadequate pro se briefing. The government asked the court to deny Mr. Thompson's request for a do over.

The court agrees with the government. Mr. Thompson has had many opportunities to argue his case. He began with appointed counsel but then—disregarding the court's recommendation—chose to proceed pro se. This decision does not entitle him to special treatment. *See United States v. Chaney*, 662 F.2d 1148, 1151 n.4 (5th Cir. 1981) ("A defendant who chooses to proceed pro se is not entitled to special treatment on appeal"); *see also United States v. Tooley*, 521 F. App'x 644, 646 (10th Cir. 2013) (noting that "this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants" (citation and internal quotation marks omitted)). Mr. Thompson's decision "relinquishe[d], as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Faretta v. California*, 422 U.S. 806, 835 (1975). And, when Mr. Thompson first exercised his self-representation right, the court conducted an extensive colloquy with him, and "found that Mr. Thompson had made a knowing, informed, and purely voluntary decision to waive his right to counsel and represent himself during the post-remand, motion-practice phase of his case." Doc. 1336 at 2. Mr. Thompson filed an extensive brief on remand (Doc. 1335), made oral argument to the court (Doc. 1360), and moved the court to reconsider its July 29, 2019 Memorandum and Order (Doc. 1371; Doc. 1372). After filing his Motion for Reconsideration, Mr. Thompson asked the court to appoint counsel again and the court granted his request.

7

Mr. Thompson's late choice to proceed with representation does not entitle him to turn back the clock and cure his own mistakes or raise arguments he could have raised had he elected to allow counsel to represent him. The court thus denies Mr. Thompson's request to file supplemental briefing.

   **2. Did the court misapply the Tenth Circuit's mandate?**

In its July 29, 2019 Memorandum and Order, the court made several conclusions about the Tenth Circuit's mandate. Doc. 1369. First, the court concluded that the mandate required a showing that *Carpenter* applies to any argument Mr. Thompson asserted on remand. *Id.* at 9 n.3. And second, the court concluded that the mandate rule prevented the court from considering arguments Mr. Thompson had failed to raise during his direct appeal. *Id.* at 9–11. Mr. Thompson now argues that the court's July 2019 Order misapprehended the mandate. The court evaluates Mr. Thompsons arguments, below.

*First*, Mr. Thompson contends that the mandate rule does not preclude a court from acting unless there is an appellate decision on the merits. His Reply asserts that the mandate rule "covers only those issues that [the higher court] decided explicitly or . . . resolved implicitly." Doc. 1411 at 3. And, because the mandate did not preclude the court from acting, the Reply contends that "'the lower court is free to decide anything not foreclosed by the mandate issued by the higher court.'" *Id*. at 4 (quoting *Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9*, 10 F.3d 700, at 706 (10th Cir. 1993), *modified on other grounds*, 39 F.3d 1078 (10th Cir. 1994)).

At bottom, Mr. Thompson's Reply argues that he is "not asking the [c]ourt to deviate from the Tenth Circuit's mandate" because the mandate "doesn't preclude consideration of Mr. Thompson's arguments." *Id.* The Reply also asserts that the court "conflated" the "two species of the mandate rule." *Id.* at 3. The crux of this argument is that the court applied the

8

"nondiscretionary" form of the mandate rule. But, the Reply argues, that rule has no effect when no "'appellate decision has issued on the merits of the claim sought to be precluded.'" *Id.* at 4 (quoting *Wilmer v. Bd. of Cty. Comm'rs*, 69 F.3d 406, 409 (10th Cir. 1995)). And so, Mr. Thompson argues, "the mandate [rule] doesn't preclude consideration of [his] arguments." *Id.* The Reply contends that the Circuit decided only that *Carpenter* supersedes its holding about the cell-site orders and the Fourth Amendment and did not reject any of Mr. Thompson's arguments.

The government responds, contending it is "obvious" the Tenth Circuit's remand instructed the court "to consider only issues that are related to *Carpenter*'s potential application to [the] case." Doc. 1418 at 4. The government argues that the Tenth Circuit "has limited the *scope of remand* with its clear language remanding the case to this [c]ourt 'to determine whether its alternative holding [regarding acquisition of CSLI] survives *Carpenter* and for further proceedings consistent with the Supreme Court's decision.'" *Id.* at 7 (quoting *United States v. Thompson*, No. 15-3313, Slip op. at 4 (10th Cir. Oct. 18, 2018)). The government acknowledges that "'the scope of mandate on remand . . . is carved out by exclusion,'" *id.* (quoting *United States v. West*, 646 F.3d 745, 749 (10th Cir 2011)), but, it contends, the Tenth Circuit's opinion limited the remand's scope to issues affected by *Carpenter*. *Id.*

The court agrees with the government. The court's July 2019 Order did not misapprehend the Tenth Circuit's mandate. As the Tenth Circuit recently reiterated, "'The mandate consists of our instructions to the district court at the conclusion of the opinion, and the entire opinion that preceded those instructions.'" *United States v. Walker*, 918 F.3d 1134, 1144 (10th Cir. 2019) (quoting *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003)). While there is a "presumption in favor of a general remand," the court is instructed to look for any "specific limitations" from the Circuit. *Id.* (citation and internal quotation marks

omitted). When it remanded the case, the Tenth Circuit explicitly defined the scope of work for this court to perform. The Circuit assigned this court the task of deciding "whether its alternative holding survives *Carpenter*, and for further proceedings consistent with" that decision. Doc. 1289 at 4. Thus, the court only may consider those issues affected by the *Carpenter* decision.[2]

*Second*, Mr. Thompson argues that he did not waive any arguments because the prior appeal is null. His Reply contends that, when vacated, a judgment is deprived of "'all conclusive effect, both as res judicata and as collateral estoppel.'" Doc. 1411 at 5 (quoting *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 35 F.3d 1466, 1469 (10th Cir. 1994)). Thus, the Reply argues, the proceedings were "reset" when the Supreme Court vacated the prior judgment. Doc. 1411 at 5. So, he says, on remand "the government can't rely on Mr. Thompson's prior position in his appeal" because there is no law-of-the-case. *Id.* at 6.

The problem with Mr. Thompson's argument is that it does not cite any authority for the proposition that a vacated judgment cures waiver. In its July 29, 2019 Memorandum and Order, the court relied on persuasive authority from the Seventh Circuit. Doc. 1369 at 10–11 (citing *United States v. Husband*, 312 F.3d 247, 250 (7th Cir. 2002)). In that case, the Seventh Circuit noted that waived issues limit the scope of remand. *Husband*, 312 F.3d at 250 ("[A]ny issue that could have been but was not raised on appeal is waived and thus not remanded."). As the Seventh Circuit explained, "[a] party cannot use the accident of a remand to raise in a second appeal an issue that he could just as well have raised in the first appeal . . . ." *United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996) (Posner, J.). The Fifth Circuit similarly has held that

---

[2] The court's July Order considered and dismissed arguments that, in its judgment, *Carpenter* did not affect. Doc. 1369 at 9 n.3 (dismissing Mr. Thompson's arguments under the Speedy Trial Act and the Speedy Trial Clause of the Sixth Amendment, and in his motion for a new sentencing proceeding because they "depend[ed] on Mr. Thompson showing, first, that *Carpenter* applies to his case and provides the basis for excluding the evidence dependent on his CSLI").

10

"an issue that could have been but was *not* raised on appeal is forfeited and may not be revised by the district court on remand." *Med. Ctr. Pharm. v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011). And, the Fifth Circuit has noted that waiver differs from the law of the case because "it arises as a consequence of a party's inaction, not as a consequence of a decision [from the court]." *Id.* (citation and internal quotation marks omitted).

The court finds the reasoning in these cases highly persuasive. Mr. Thompson's unsupported argument is not. The court is not convinced that it misapprehended the controlling law. Exercising its discretion, the court declines to reconsider its previous conclusion about the scope of the Tenth Circuit's mandate.

### 3. Did Mr. Thompson preserve his Kansas wiretap argument on direct appeal?

In its July 29, 2019 Memorandum and Order, the court noted that Mr. Thompson had conceded that "he did not raise the argument that authorities had exceeded the scope of the Kansas wiretap orders until the remand proceeding." Doc. 1369 at 11. Now, in his Motion for Reconsideration, Mr. Thompson argues that he, in fact, did not waive this argument about the scope of the Kansas wiretap order. He argues that his counsel raised it in the opening brief during his direct appeal to the Tenth Circuit. Doc. 1372 at 5. He claims his opening brief asserts that CSLI was "the fruit of the poisonous tree, and that any interceptions from the wiretap orders and communications used was unlawful." *Id.* And so, he argues, the opening brief asked the court of appeals to suppress evidence "if it was obtained under the auspices of a Kansas wiretap order but in violation of Kansas Law." *Id.* at 6. He also argues that the Tenth Circuit's mandate "binds" the court to consider the merits of his argument because *Carpenter* "wiped away" previous errors and thus superseded the Tenth Circuit's initial opinion. *Id.* at 9, 13. Finally, Mr. Thompson asserts several arguments that he raised in the first round of briefing, such as this:

11

"The [§] 2703 Order Was Still The Mechanism Used By The Government To Acquire The Historical [CSLI]" and "The Court Failed To Consider Whether The Government Invited Mr. Thompson's Waiver Based On The Government's Good Faith Position . . . ." *Id.* at 10, 12.

The government contends that Mr. Thompson did not raise the scope of the Kansas wiretap orders as an issue in his direct appeal. The government acknowledges that the statements quoted by Mr. Thompson appeared in his opening brief but, those statements, the government argues, "did not purport to address the issue of whether authorities had exceeded the scope" of the Kansas wiretap orders by acquiring Mr. Thompson's CSLI. Doc. 1402 at 18. And ultimately, the arguments Mr. Thompson cites all focused on whether the government could demonstrate that a wiretapped phone call had originated inside the jurisdiction of the state court judge who issued the warrant. The government also asserts that—even if Mr. Thompson did not waive his argument—*Carpenter* had no bearing on the scope of the Kansas wiretap order. Mr. Thompson acknowledges that authorities acquired his CSLI using state-issued warrants—and not under a § 2703(d) order. Mr. Thompson thus appears to concede that his CSLI was gathered before the court issued its §2703 order. So, the government argues, there is no "causal link between the government's acquisition of his CSLI and the § 2703 order," *id.* at 23, and the court should decline to reconsider its earlier ruling.

The court agrees. Mr. Thompson's arguments do not support his request to reconsider for two reasons.

*First*, Mr. Thompson is correct about his premise. His counsel referenced the government's failure to order CSLI under the Kansas wiretap order in the fact section of his opening brief. Br. of Def.-Appellant, at 13, *United States v. Thompson*, 866 F.3d 1149 (10th Cir. 2017) *vacated*, 138 S. Ct. 2706 (2018) (No. 15-3313), Doc. 01019701920. But the brief never

12

argues that the government unlawfully gathered CSLI under the Kansas wiretap order. Instead, Mr. Thompson's brief repeatedly argues that the government acquired his CSLI in violation of the Fourth Amendment warrant requirement. But he never ties that argument to the scope of the Kansas court's warrant. *See, e.g.*, *id.* at 29 ("[B]ecause the CSLI was unlawfully obtained without a valid Title III search warrant, it must be excluded and suppressed as the 'fruits' of a warrantless wire search."). In sum, Mr. Thompson did not make any arguments about the scope of the Kansas wiretap order in his direct appeal to the Circuit.

*Second*, Mr. Thompson's argues that "[r]egardless of how the CSLI was physically received in this case the fact remains that the [§] 2703(d) order was the mechanism used by the government to acquire the CSLI." Doc. 1372 at 10. He also argues that, notwithstanding the waiver of his arguments, *Carpenter*'s "second holding" applies to his case. *Id.* at 8. Mr. Thompson contends this "second holding" refers to *Carpenter*'s conclusion that 18 U.S.C. § 2703(d) was "not a permissible mechanism for accessing historical [CSLI] because the showing required under the [Stored Communications] Act fell well short of probable cause." *Id.* (quoting *Carpenter*, 138 S. Ct. at 2221 (internal quotations omitted)). But Mr. Thompson does not explain why he failed to raise these arguments in his first motion. Nor does he explain why the court should consider these arguments in light of his concession that the Kansas wiretap order—not the § 2703(d) order—was the source of his CSLI. A motion for reconsideration "is not [an] appropriate [device] to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Ferluga*, 236 F.R.D. at 549 (citing *Servants of Paraclete*, 204 F.3d at 1012). Mr. Thompson's argument is one he easily could have made in his brief supporting his Motion to Vacate (Doc. 1335). He did not. The court thus declines to address it now.

13

### 4. Did the court misapprehend Mr. Thompson's speedy trial argument?

In its July 29, 2019 Memorandum and Order, the court concluded that Mr. Thompson's Speedy Trial Act arguments failed because he had failed to show that *Carpenter* applied to them or, in any event, he had waived his argument. Doc. 1369 at 9 n.3. Mr. Thompson asserts that he did not waive his argument that *Carpenter* affected his speedy trial rights because he adopted both his standby counsel's and co-defendant's position on the issue. And so, according to Mr. Thompson, the court erred when it held he had waived the argument.

The government asserts that Mr. Thompson waived this argument because it was not made in his opening brief to the Tenth Circuit. Doc. 1402 at 25 (citing *Walker*, 918 F.3d at 1151). And, the government contends, Mr. Thompson cannot cure his waiver with his standby counsel's supplemental brief. The government also argues that, even if the court considered Mr. Thompson's argument, there was "no clear or blatant error justifying reconsideration or deviation from the mandate rule." *Id.* at 25. The government asserts that Mr. Thompson's argument is barred by "the law-of-the-case doctrine" because the Tenth Circuit considered and rejected Mr. Thompson's speedy trial argument. Because Mr. Thompson joined his co-defendant's arguments, the government recognizes that Mr. Thompson did not waive those speedy-trial arguments. But, because the Tenth Circuit considered and rejected those arguments, the government argues that they are "inconsequential" here. *Id.* at 26 (citing *United States v. Madkins*, 866 F.3d 1136, 1140–43 (10th Cir. 2017)).

The government has the better of this issue. For reasons already explained, the Circuit's mandate is limited to issues affected by *Carpenter*. The court's July Order dismissed Mr. Thompson's speedy trial arguments because he failed to show how *Carpenter* affected them. And, even acknowledging Mr. Thompson's adoption of his co-defendant Madkins's position on

14

the speedy trial issue, a motion for reconsideration "is not [an] appropriate [device] to revisit issues already addressed or advance argument that could have been raised in prior briefing." *Ferluga*, 236 F.R.D. at 549 (citing *Servants of Paraclete*, 204 F.3d at 1012). Mr. Thompson has not shown why he was unable to raise these arguments in his first brief, nor why the court should reconsider ruling now. The court denies Mr. Thompson's motion for reconsideration based on his speedy trial arguments.

### 5. Can the court consider Mr. Thompson's sentencing arguments?

Last, Mr. Thompson argues that the court should "expand the scope of the mandate" and resentence him under the First Step Act. Doc. 1371 at 2. He asserts that the First Step Act ("FSA") qualifies as a change in controlling legal authority, which is an exception to the mandate rule. And, he argues resentencing is necessary to avoid unwarranted sentence disparities. Mr. Thompson also asserts that *Carpenter* affected the outcome of his sentencing hearing because the court considered evidence derived from unlawful wiretaps when it determined his sentence.

The court already has considered and rejected Mr. Thompson's FSA and *Carpenter* arguments about sentencing. Doc. 1369 at 9 n.3, 15 n.5. The court held that his arguments depend on a showing "that *Carpenter* applies to his case and provides the basis for excluding the evidence dependent on his CLSI." *Id.* at 9 n.3. And, the court cited other reasons for dismissing Mr. Thompson's arguments, including the well-established rule that "the exclusionary rule would not have applied at Mr. Thompson's sentencing proceeding[.]" *Id.* (citing *United States v. Ryan*, 236 F.3d 1268, 1271–72 (10th Cir. 2001)). Mr. Thompson has not provided any basis for the court to reconsider what it already has decided. A motion for reconsideration "is not [an] appropriate [device] to revisit issues already addressed[.]" *Ferluga*, 236 F.R.D. at 549 (citation omitted). The court thus declines to address these renewed arguments yet again.

15

Mr. Thompson also asserts, for the first time, that the court should resentence him to avoid an unwarranted sentence disparity. Doc. 1372 at 18. But a motion to reconsider "is not appropriate to . . . advance arguments that could have been raised in prior briefing." *Ferluga*, 236 F.R.D. at 549 (citing *Servants of Paraclete*, 204 F.3d at 1012). Mr. Thompson does not assert that the court "has misapprehended the facts, a party's position, or the controlling law." *Id.* (citing *Servants of Paraclete*, 204 F.3d at 1012). Thus, the court need not—and indeed, cannot—address Mr. Thompson's argument on a motion for reconsideration.

### III. Conclusion

For all these reasons, the court denies Mr. Thompson's request for supplemental briefing and declines to reconsider its July 29, 2019 Memorandum and Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Anthony Thompson's Motion to Reconsider (Doc. 1371; Doc. 1372) is denied. This Memorandum and Order resolves all the issues raised by Mr. Thompson's Motion to Reconsider. It thus terminates the tolling of his appeal.

**IT IS SO ORDERED.**

**Dated this 18th day of March, 2020, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**